## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| MARIA GUADALUPE ELLIS, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| vs. | ) ) ) | |
| NIKE USA, INC, | ) | |
| Serve:  Registered Agent | ) | JURY TRIAL DEMANDED |
| United Agent Group Inc. | ) | |
| 12747 Olive Boulevard, #300 | ) | |
| St. Louis, MO 63141 | ) | |
| | ) | |
| NIKE RETAIL SERVICES, INC, | ) | |
| Serve:  Registered Agent | ) | |
| United Agent Group Inc. | ) | |
| 12747 Olive Boulevard, #300 | ) | |
| St. Louis, MO 63141 | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiff Maria Guadalupe Ellis, on behalf of herself and all others

similarly situated, through her attorneys, and brings this action against Defendants Nike USA,

Inc. and Nike Retail Services, Inc. (hereinafter referred to as "Defendants" or "Nike"); and, upon

information and belief, except as to the allegations that pertain to herself, which are based upon

personal knowledge, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action on her own behalf and as a representative of a class of

persons similarly situated who purchased Nike's "Sustainability" Collection Products for

personal, family, or household purposes.

2.      In recent years, consumers have become significantly more aware of and sensitive to the impact of clothing and household products on the environment.  Consumers seek, and will pay a premium for, products that are responsibly made, including products that will not negatively affect the environment.

3.      As a result, demand has increased for "green" products that are sustainable and environmentally friendly.

4.      Nike develops, manufacturers, markets, distributes, and sells a variety of personal, family, or household products in its self-proclaimed sustainable clothing line.  (identified in Exhibit A attached hereto) (hereinafter the "'Sustainability' Collection Products" or the "Products").[1]

5.      This action seeks to remedy the unlawful, unfair, deceptive, and misleading business practices of Nike with respect to the marketing and sale the Products, which are sold throughout the State of Missouri and the United States.

6.      In an effort to increase profits and to gain an advantage over its lawfully acting competitors, Nike falsely and misleadingly markets the Products as "sustainable," made with "sustainable materials," and environmentally friendly.  The labeling of the Products claims the following: "Sustainability;" "made with recycled fibers" which "reduces waste and our carbon footprint;" support a "Move to Zero" which "is Nike's journey toward zero carbon and zero waste to help protect the future of sport;" and contain a circular symbol that means that the Products are made with "sustainable" and environmentally friendly materials.  Contrary to these representations, the Products plainly do ***not*** lead to "Sustainability," are not "made with recycled fibers" which "reduce waste and our carbon footprint," do not support a "Move To Zero carbon

---

[1] Plaintiff reserves the right to amend this Complaint to include any additional items sold by Nike that are within the scope of this Complaint.

and zero waste," and they are not made with "sustainable" and environmentally friendly materials because the Products are not sustainable, and are not made from sustainable and environmentally friendly materials that are less harmful to the environment.  The marketing and labeling deceives consumers into believing that they are receiving Products that are "sustainable," "made with recycled fibers" which "reduce waste and our carbon footprint," a "move to zero carbon and zero waste," made from "sustainable materials" and environmentally friendly, but Nike's Products do not live up to these claims.

7.    Conscious of consumers' increased interest in more "green" products that are more sustainable and environmentally friendly and willingness to pay more for products perceived to meet this preference, Nike misleadingly, illegally, and deceptively seeks to capitalize on these consumer "green" trends.

8.    Plaintiff purchased the Products in reliance on Nike's representations that these Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," support a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.  She would not have purchased the Products if she had known that they were not sustainable, not made from sustainable materials, and not environmentally friendly.

9.    Consumers expect products that are marketed as "sustainable, "made with recycled fibers" which "reduces waste and our carbon footprint;" a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly to be sustainable and made from sustainable and environmentally friendly materials that are less harmful and more beneficial to the environment.

10.     Plaintiff and the Class reasonably believed Nike's false and misleading representations.  Nike knew or reasonably should have known that its representations regarding the Products were false, deceptive, misleading, and unlawful under Missouri law and common law.

11.     Nike misrepresented, and/or concealed, suppressed, or omitted material facts in connection with the sale, distribution, and/or advertisement of the Products.

12.     Plaintiff and the Class Members paid a premium for the Products over comparable products that did not purport to be "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.  Given that Plaintiff and Class Members paid a premium for the Products based on Nike's representations that they are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly, Plaintiff and the Class Members suffered an injury in the amount of the purchase price and/or the premium paid.

13.     Plaintiff brings claims against Nike individually and on behalf of the Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period") for (1) violation of the Missouri Merchandising Practices Act ("MMPA"), § 407.010 *et. seq.*; (2) unjust enrichment; (3) negligent misrepresentation; and (4) fraud.

## PARTIES

14.     At all relevant times, Plaintiff Maria Guadalupe Ellis was and is a citizen of the State of Missouri, residing in St. Louis County.  During the Class Period, Plaintiff has purchased Nike Products for personal, family, or household use from a Dick's Sporting Goods store in St.

Louis County, Missouri.  Plaintiff's purchases include, without limitation, Nike "Sustainability" Collection Nike Dri-FIT One Women's Standard Fit Short-Sleeve Cropped Top, Nike Dri-FIT Rise 365 Men's Short-Sleeve Running Top, and Nike Dri-FIT One Women's Luxe Standard Fit Tank in the State of Missouri.  Accordingly, Plaintiff has been injured as a result of Defendant's unlawful conduct alleged herein.

15.    Plaintiff purchased the Nike Products because she saw the labeling, advertising, the Defendants' website, and read the packaging, which represented that the Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.  Plaintiff relied on Defendants' false, misleading, and deceptive representations that the Products are "sustainable," "made with recycled fibers" which reduces waste," a "move to zero" waste, made with "sustainable materials," and environmentally friendly.  She understood this to mean that the Products were sustainable, made from sustainable materials, and environmentally friendly making the Products less harmful and more beneficial to the environment.  Plaintiff would not have purchased the Products at all, or would have been willing to pay a substantially reduced price for the Nike Products, if she had known that they were not sustainable and made from sustainable and environmentally friendly materials that are less harmful and more beneficial to the environment.  Plaintiff would purchase the Products in the future if Defendants changed the composition of the Products so that they conformed to their "Sustainability," made with "sustainable materials," and environmentally friendly marketing, packaging, and labeling, or if the packages and labels were corrected and she could trust that they were correct.

16.    Defendant Nike USA, Inc. is an Oregon corporation with its principal place of business in Beaverton, OR.  Nike USA, Inc. is a multinational company that is engaged in the

5

design, development, manufacturing, and worldwide marketing and sales of footwear, apparel, equipment, accessories, and services.  Nike USA, Inc.'s Products are sold to consumers through its website and at retail stores.  Nike USA, Inc. conducts business, including advertising, distributing, and/or selling the Nike "Sustainability" Collection Products, throughout Missouri, including the County of St. Louis, Missouri, and the United States.

17.     Defendant Nike Retail Services, Inc. is an Oregon corporation with its principal place of business in Beaverton, OR.  Nike Retail Services, Inc. is a multinational company that is engaged in the worldwide retails sales of footwear, apparel, equipment, accessories, and services. Nike Retail Services, Inc. conducts business, including selling the Nike "Sustainability" Collection Products, throughout Missouri, including the County of St. Louis, Missouri, and the United States.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000, exclusive of interests and costs, and Plaintiffs, as well as most members of the proposed Classes, which total more than 100 class members, are citizens of states different from the state of Defendants.

19.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in Missouri or otherwise intentionally did avail themselves of the markets within Missouri, through their sale of the Product in Missouri and to Missouri consumers.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendants regularly conduct business throughout this District, and a substantial part of the events and/or omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

21.     In recent years, consumers have become increasingly concerned about buying clothing that is sustainable and environmentally friendly.  Consumers have poured billions of dollars into the "green" and environmentally friendly clothing market.

22.     In response to consumers' desire for more sustainable and environmentally friendly clothing products, many companies "greenwash" their products by deceptively claiming that their clothing is sustainable, made from materials that are sustainable, and environmentally friendly.  Unfortunately, rather than creating sustainable and environmentally friendly clothing products that consumers desire, many companies, like Nike, have chosen instead to "greenwash" their products through deceptive labeling, suggesting and outright stating that their clothing products are sustainable, made from sustainable materials, and environmentally friendly when, in fact, they are not.  Thus, the clothing products give the false and misleading impression that they are less harmful or more beneficial to the environment than they really are.

### The Federal Trade Commission "Green Guides"

23.     Recognizing this problem, the United States Federal Trade Commission ("FTC") created the "Green Guides" to help companies avoid making misleading and deceptive claims.[2]

24.     The Green Guides state that "[t]he following general principles apply to all environmental marketing claims, including those described in §§ 260.4 – 16.  Claims should

---

[2] *See generally* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims.

comport with all relevant provision of these guides."  16 C.F.R. § 260.3.  Further, the Green

Guides' general principles state:

(c) **Overstatement of environmental attribute:** An environmental marketing claim
should not overstate, directly or by implication, an environmental attribute or
benefit. **Marketers should not state or imply environmental benefits if the
benefits are negligible.**

(d) Comparative claims: Comparative environmental marketing claims should be
clear to avoid consumer confusion about the comparison. Marketers should have
substantiation for the comparison.

> **Example 4:[3]  A product is advertised as "environmentally preferable."  This
> claim likely conveys that the product is environmentally superior to other
> products. Because it is highly unlikely that the marketer can substantiate the
> messages conveyed by this statement, this claim is deceptive.** The claim would
> not be deceptive if the marketer accompanied it with clear and prominent
> language limiting the environmental superiority representation to the particular
> attributes for which the marketer has substantiation, provided the advertisement's
> context does not imply other deceptive claims. For example, the claim
> "Environmentally preferable: contains 50% recycled content compared to 20% for
> the leading brand" would not be deceptive.

*Id.* (emphasis added).

25.    In addressing "General Environmental Benefit Claims," the Green Guides state:

(a) **It is deceptive to misrepresent, directly or by implication, that a product,
package, or service offers a general environmental benefit.**

(b) Unqualified general environmental benefit claims are difficult to interpret and
likely convey a wide range of meanings.  In many cases, such claims likely
convey that the product, package, or service has specific and far-reaching
environmental benefits **and may convey that the item or service has no
negative environmental impact. Because it is highly unlikely that marketers
can substantiate all reasonable interpretations of these claims, marketers
should not make unqualified general environmental benefit claims.**

(c) Marketers can qualify general environmental benefit claims to prevent deception
about the nature of the environmental benefit being asserted.  To avoid deception,
marketers should use clear and prominent qualifying language that limits the
claim to a specific benefit or benefits.  Marketers should not imply that any
specific benefit is significant if it is, in fact, negligible.  If a qualified general

---

[3] The Green Guides provide examples of General Principles in order to "provide the
Commission's views on how reasonable consumers likely interpret certain claims."  16 C.F.R. §
260.1(d).

claim conveys that a product is more environmentally beneficial overall because of the particular touted benefit(s), marketers should analyze trade-offs resulting from the benefit(s) to determine if they can substantiate this claim.

(d) Even if a marketer explains, and has substantiation for, the product's specific environmental attributes, this explanation will not adequately qualify a general environmental benefit claim if the advertisement otherwise implies deceptive claims. Therefore, marketers should ensure that the advertisement's context does not imply deceptive environmental claims.

16 C.F.R. § 260.4 (emphasis added).

26.    The Green Guides also provide examples of General Environmental Benefit

Claims in order to "provide the Commission's views on how reasonable consumers likely

interpret certain claims."[4]    The FTC provides the following relevant examples:[5]

> **Example 1:** The brand name "Eco-friendly" likely conveys that the product has farreaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, the use of such a brand name is deceptive. **A claim**, such as "Eco-friendly: made with recycled materials," **would not be deceptive if:** (1) the statement "made with recycled materials" is clear and prominent; (2) the marketer can substantiate that the entire product or package, excluding minor, incidental components, is made from recycled material; **(3) making the product with recycled materials makes the product more environmentally beneficial overall; and (4) the advertisement's context does not imply other deceptive claims.**

> *** * ***

> **Example 3:** A marketer's advertisement features a picture of a laser printer in a bird's nest balancing on a tree branch, surrounded by a dense forest. In green type, the marketer states, "Buy our printer. Make a change." **Although the advertisement does not expressly claim that the product has environmental benefits, the featured images, in combination with the text, likely convey that the product has far-reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, this advertisement is deceptive.**

*Id.* (emphasis added).

---

[4] 16 C.F.R. § 260.1(d).
[5] 16 C.F.R. § 260.4.

**Nike's False and Misleading Representations**

27.     Nike has misrepresented the Products in its self-proclaimed sustainable clothing line as "sustainable," made with "sustainable materials," "eco-friendly," and environmentally friendly throughout the Class Period.

28.     Nike's marketing materials are replete with statements that the Products are "sustainable," made with "sustainable materials," "eco-friendly," and environmentally friendly.

29.     Nike labels the Products "Sustainability," and claims that they are "made with recycled fibers" which "reduces waste and our carbon footprint," support a "Move to Zero" which "is Nike's journey toward zero carbon and zero waste to help protect the future of sport," contain a circular symbol that means that the Products are made with "sustainable" materials, and environmentally friendly.[6]

---

[6] Nike defines what the circular symbol that it places on the Products and their labels means as follows: "Taking Action, Together.  Did you know?  The 'Sunburst' symbol was created in the 1970s as a circular option where asymmetry of the Swoosh logo didn't work. Since then, in the same nature of our circular design philosophy, we've repurposed the logo. **Today, when you see this logo, you see one small step in our journey to Move to Zero**." https://www.nike.com/sustainability/services (emphasis added) (last accessed on May 3, 2023).



30.     In addition, Nike's marketing, advertisements, and social media for the

"Sustainability" Collection Products centers around "green" imagery with models and cartoon

characters surrounded by lots of flowers and plush green plants.





31.     Finally, during the Class Period, the "Sustainability" section of Nike's website,

https://www.nike.com/sustainability/, contained the following statements that the Products are

"sustainable," made with "sustainable materials," "eco-friendly," and environmentally friendly:

- "**OUR PATH TO ZERO**

    **We all share the responsibility for our playground—Planet Earth. That's why we're reimagining things top to bottom through sustainability and circularity.**

13

We're focusing on carbon, waste, water, and chemistry, aiming to hit targets by 2025. Check out our Impact Report to see our progress."[7]

- "**TAKING ACTION, TOGETHER**



Did you know? The 'Sunburst' symbol was created in the 1970s as a circular option where asymmetry of the Swoosh logo didn't work. Since then, in the same nature of our circular design philosophy, we've repurposed the logo. **Today, when you see this logo, you see one small step in our journey to Move to Zero.**

Get the latest Nike Sustainability news and discover new ways we can help protect the future of sport together."[8]

- **"Circular Solutions**

Protecting the future of sports means rethinking how we bring products into the world, make them last and giving them new life.  Learn about the services we offer, the steps we're taking, and how you can move to zero with us."[9]

- **"Sustainable and Eco-Friendly Shoes for Every Occasion**

**Join Nike's journey to zero carbon and zero waste by choosing a shoe made with sustainable materials.**

Our planet is our playing field — without it, there is place to do the sports and activities we love, no reason for the fitness goals we strive to reach. It doesn't matter if you're an outdoorsy athlete who loves to hit the trails or a champion on the treadmill in your local gym — climate change impacts all of us, and **we all need to do our part to reduce our carbon footprint.**

While much of our individual carbon footprint comes from the energy we use in our home and the miles we put on our vehicles, there are other choices that impact the environment, including the products we buy. Sneakers are no exception. **That's why Nike is committed to offering footwear options and running shoes that are eco-friendly. If you see a Nike sneaker or shoe style marked with 'Sustainable**

---

[7] https://www.nike.com/sustainability/ (last accessed on May 3, 2023).
[8] https://www.nike.com/sustainability/services (emphasis added) (last accessed on May 3, 2023).
[9] https://www.nike.com/sustainability/ (last accessed on May 3, 2023).

Materials,' that means the shoe is produced with at least 20 percent recycled material by weight."[10]

- **"Nike's Top Sustainable Shoe Styles**

    **Nike makes sustainable footwear across different price ranges for men, women and kids. Our eco-friendly sneakers and running shoes come in a variety of styles, so you don't have to compromise your aesthetic to live sustainably and be kind to the planet when you want a new pair of kicks.** Here are our favorites in a variety of styles and price ranges."[11]

- **"SUSTAINABLE MATERIALS + INNOVATION**

    From sweat-wicking fabrics to the bouncy foam under your feet, materials make up more than 70% of any product's footprint. **By inventing more efficient materials and reusing existing plastics, yarns and textiles, we're making big strides on our journey to zero carbon and zero waste."[12]**

- **"Recycled Polyester**

    Our recycled polyester is made from plastic bottles which are cleaned, shredded into flakes, converted into pellets, and then spun into a high-quality yarn. **In addition to reducing waste, recycled poly lowers carbon emissions by up to 30% compared to virgin poly, and diverts an average of 1 billion plastic bottles annually from landfills and waterways.**"[13]

- **"Recycled Nylon**

    Our recycled nylon is transformed from a variety of materials, like carpet and used fish nets. The nylon is cleaned, sorted, and converted into flakes, all before undergoing a chemical or mechanical recycling process. **The new recycled nylon yarn reduces our carbon emissions by up to 50% compared to virgin nylon."[14]**

32.     Based on these "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," "move to zero carbon and zero waste," made with "sustainable materials," "eco-friendly," and environmentally friendly representations, reasonable consumers,

---

[10] https://www.nike.com/a/sustainable-eco-friendly-shoes (emphasis added) (last accessed on May 3, 2023).

[11] *Id.* (emphasis added) (last accessed on May 3, 2023).

[12] https://www.nike.com/sustainability/materials (emphasis added) (last accessed on May 3, 2023).

[13] *Id.* (emphasis added) (last accessed on May 3, 2023).

[14] *Id.* (emphasis added) (last accessed on May 3, 2023).

including Plaintiff, believe that the Products are "sustainable, "made with recycled fibers" which "reduce waste and our carbon footprint," "eco-friendly," less environmentally damaging, made from "sustainable materials," and environmentally friendly.  This understanding is reinforced by the Products' labeling, marketing, and advertising which further represents that they are "Green" products which are known to be sustainable and environmentally friendly.  However, in spite of the labeling and marketing representations, the Products are not "sustainable," made from "sustainable materials," and environmentally friendly.  That is because they are neither sustainable nor made from sustainable and environmentally friendly materials that are less harmful and more beneficial to the environment.

33.     Representing that a product is "sustainable, "made with recycled fibers" which "reduces waste and our carbon footprint," cause less environmental damage, and are made from sustainable and environment friendly materials is a statement of fact.

34.     Consumers reasonably believe that a product in a self-proclaimed sustainable clothing line labeled and marketed as "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," "eco-friendly," and environmentally friendly to be sustainable and made from sustainable and environmentally friendly materials that are less harmful and more beneficial to the environment.

**The Products Are Not "Sustainable" or Environmentally Friendly**

35.     Nike's representations that the Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly are false, misleading,

and deceptive because the Products are not sustainable, and are not made from sustainable and environment friendly materials that are less harmful and more beneficial to the environment.

36.     Despite claiming that the Nike "Sustainability" Collection Products are "made with recycled fibers," they are predominantly made with virgin synthetic materials.  In fact, of the 2,452 Nike "Sustainability" Collection Products identified in Exhibit A attached hereto, only 239 Products are actually made with any recycled materials.  *See* Exhibit A.

37.     Thus, more than 90% of the Nike "Sustainability" Collection Products are not "made with recycled fibers" which "reduces waste and our carbon footprint."  *See id.*

38.     The vast majority of the Nike "Sustainability" Collection Products are made from plastic-based materials.  *See id.*  Synthetic materials like polyester, a form of plastic derived from oil, shed plastic particles, called microplastics, with wash and wear.  They are a prime source of microplastic pollution, which is especially harmful to marine life.  The Products send microplastics into the oceans from the washing of plastic-based textiles such as polyester and nylon.  Textiles are the largest source of microplastic pollution in the world's oceans.  According to a U.S. Geological Survey, 71% of microplastics found in samples of river water came from textiles.

39.     Additionally, microplastics harm not only wildlife, but also make their way up the food chain to humans, raising a host of health risks.

40.     Further, synthetic, plastic-based materials like polyester are not biodegradable or recyclable, require loads of energy for extraction and processing, and are derived from nonrenewable resources.

41.     Because a significant percentage of the Products are made from plastic-based materials, the Nike "Sustainability" Collection Products are not "sustainable," "made with

recycled fibers," made with "sustainable" materials, or environmentally friendly rendering Nike's representations that the Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly false, misleading, and deceptive.

42.     The limited number of Nike "Sustainability" Collection Products that actually contain any recycled materials are primarily made of recycled polyester and recycled nylon.  But neither of those materials are sustainable and/or environmentally friendly.  Recycled polyester and recycled nylon are still plastic, so they are not biodegradable.  Once you dispose of the materials, they sit in a landfill for hundreds of years.  They are not "sustainable" and do not "reduce waste and our carbon footprint."  Nor do they support a "Move To Zero carbon and zero waste."

43.     Recycled polyester has been heavily marketed by Nike as a sustainable and environmentally responsible material, and presented to consumers as a sustainable material that "reduces waste and our carbon footprint" and" supports a "Move To Zero carbon and zero waste."  Nike also claims that "[i]n addition to reducing waste, recycling poly lowers carbon emissions by up to 30% compared to virgin poly, and diverts an average of 1 billion plastic bottles annually from landfills and waterways."[15]  But, given that recycled polyester is a one-way street to landfill or incineration, this material does not make a product "sustainable" or environmentally friendly.

44.     The vast majority of recycled polyester is sourced from recycled polyethylene terephthalate ("PET") bottles that have been mechanically recycled into polyester fiber for

---

[15] https://www.nike.com/sustainability/materials (emphasis added) (last accessed on May 3, 2023).

clothes.[16]  Nike admits that its "recycled polyester is made from plastic bottles which are cleaned, shredded into flakes, converted into pellets, and then spun into a high-quality yarn."[17]

45.     The method of downcycling PET bottles to polyester is problematic in several ways.

46.     First, PET bottles can generally already be recycled a number of times – in a closed-loop, bottle-to-bottle recycling system – if collected through clean collection streams, such as through deposit-return systems.[18]  Indeed, because mechanical recycling makes the fiber lose its strength, recycled PET clothes are not guaranteed to be infinitely recyclable, and often lose durability when repurposed multiple times.[19]  Downcycling PET bottles to clothes is not a circular solution, and eventually these products end up in landfill.[20]  In comparison, PET bottles can be recycled back into PET bottles many times if they are part of clean, separated waste streams.[21]  Refillable PET bottles can be reused or refilled up to fifteen (15) times before recycling, eliminating the need to manufacture new bottles and avoiding many of the environmental impacts associated with their production and end-of-life management.[22]  As such,

---

[16] Changing Markets Foundation. Synthetics Anonymous: Fashion Brands' Addiction to Fossil Fuels Report, 2021 at BOX 2.2: Downcycling plastic bottles to clothes. [ONLINE] Available at: https://changingmarkets.org/portfolio/fossil-fashion/ (last accessed on May 4, 2023); Changing Markets Foundation (2021) Fossil fashion: The hidden reliance of fast fashion on fossil fuels. [ONLINE] Available at: http://changingmarkets.org/wp-content/uploads/2021/01/FOSSIL-FASHION_Web-compressed.pdf. (last accessed on May 4, 2023); Ellen MacArthur Foundation (2017) A new textiles economy: Redesigning fashion's future. [ONLINE] Available at: https://www.ellenmacarthurfoundation.org/our-work/activities/make-fashion-circular/report. (last accessed on May 4, 2023).
[17] https://www.nike.com/sustainability/materials (emphasis added) (last accessed on May 3, 2023).
[18] Changing Markets Foundation. Synthetics Anonymous: Fashion Brands' Addiction to Fossil Fuels Report, 2021 at BOX 2.2: Downcycling plastic bottles to clothes. Available online: https://changingmarkets.org/portfolio/fossil-fashion/ (last accessed on May 4, 2023).
[19] Id.
[20] Id.
[21] Id.
[22] Id.

turning plastic bottles into clothes should be considered a one-way ticket to landfill, incineration or being dumped in nature.[23]

47.     Second, there is direct competition between the packaging and clothing industries for PET bottles.[24]  The introduction of legislation in the United States, and several jurisdictions around the world, regarding recycled content targets for PET bottles will significantly influence demand from bottle manufacturers.[25]  As a result, competition from fiber production will hinder the amount of recyclable PET bottles being used for bottle-to-bottle recycling.[26]  In a circular economy, materials should be reused and recycled like-for-like to prevent waste and unnecessary extraction of virgin materials – in other words, clothes should be made into new clothes, and packaging into new packaging, rather than poaching from other waste streams.

48.     Finally, recycled polyester does not restrict the shedding of microplastics, meaning billions of plastic particles still end up reaching the ocean, the air we breathe and our food chains.[27]  According to a recent study from Plymouth University, in the UK, each cycle of a washing machine can release more than 700,000 plastic fibers into the environment.[28]  A paper published in 2011 in the journal Environmental Science Technology found that microfibers made up 85 percent of human-made debris on shorelines around the world.[29]  It doesn't matter if garments are from virgin or recycled polyester, they both contribute to microplastics pollution.

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at 2.2.3. Microplastics: Swept under the carpet (last accessed on October 10, 2022).
[28] https://fashionunited.uk/news/fashion/how-sustainable-is-recycled-polyester/2018111540000 (last visited May 4, 2023).
[29] *Id.*

49.     Given that recycled polyester represents a one-way street to landfill or incineration, this material does not make a product "sustainable," "reduce waste," support a "Move to Zero carbon and zero waste," or environmentally friendly.

50.     Recycled nylon has also been heavily marketed by Nike as a sustainable and environmentally responsible material, and presented to consumers as a sustainable material that "reduces waste and our carbon footprint" and" supports a "Move To Zero carbon and zero waste."  But recycled nylon is still plastic, so it's not biodegradable.  This means that microplastics are still being released in water streams, ending up in our oceans.[30]

51.     Recycled nylon is not a sustainable and/or environmentally responsible material. Recycled nylon neither diverts discarded material from the environment nor does it promote new recycling streams for nylon products that are no longer functional.  It just delays the inevitable. Nike is essentially moving plastic from the ocean to the landfill.

52.     Basing sustainability strategies on the idea that consumers can continue to consume disposable plastic goods (because they can be recycled into more products) is highly problematic.  This method of "green" marketing does not address the fundamental issue of perpetuating disposable solutions and over-consumption of natural resources.  Indeed, these strategies encourage consumers to buy more clothes or throw away garments sooner, in the belief they can be recycled in some magic machine.

53.     Thus, the Products give the false and misleading impression that they are "sustainable," "reduce waste," support a "Move to Zero carbon and zero waste," made from "sustainable materials," environmentally friendly, and that they are less harmful or more beneficial to the environment than what they really are.

---

[30] https://www.sustainably-chic.com/blog/is-nylon-sustainable (last accessed May 4, 2023).

**Plaintiff and Reasonable Consumers Were Misled by the Products**

54.     Given the significant presence of harmful and environmentally damaging materials in the Products, Nike's representations that they are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly are deceptive and misleading.

55.     By misleadingly and deceptively labeling and marketing the Products, as described herein, Nike sought to take advantage of consumers' desire for true sustainable and environmentally friendly clothing products.  Nike has done so at the expense of unwitting consumers and Nike's lawfully acting competitors, over whom Nike maintains an unfair competitive advantage.

56.     A review of consumer sales between 2013 and 2018 by researchers at the Stern Center for Sustainable Business, of New York University, found that products that were highlighted as "sustainable" would sell much faster than products which were not.[31]  So, by giving the impression that they are an environmentally conscious company, and by selling products that are marketed as "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly, Nike is creating a massive advantage in terms of sales and profit.  This is what lies at the heart of its sustainable style focus.

57.     The "sustainable" and environmentally friendly representations were and are material to reasonable consumers, including Plaintiff, in making purchasing decisions.

---

[31] "Research on IRI Purchasing Data (2013-2018)," NYU Stern (March 2019).  [ONLINE] Available at: https://www.stern.nyu.edu/sites/default/files/assets/documents/NYU%20Stern%20CSB%20Sustainable%20Share%20Index%E2%84%A2%202019.pdf (last accessed on May 4, 2023).

58.     Plaintiff relied on Nike's misrepresentations, described herein, in making the decision to purchase the Products.

59.     At the time Plaintiff purchased the Products, Plaintiff did not know, and had no reason to know, that the Products' labeling and advertising were false, misleading, deceptive, and unlawful as set forth herein.

60.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly, especially at the point of sale.  Consumers would not know the true nature of the clothing's materials merely by reading the products' label.

61.     Discovering that the Products are not "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly because they are not made from sustainable and environmentally friendly materials that are actually less harmful and more beneficial to the environment requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though all of the Products' materials are identified on the Products' labeling, the reasonable consumer would not understand – nor are they expected to understand - that these materials are environmentally damaging.

62.     Moreover, the reasonable consumer is not expected or required to scour the Products' materials in order to confirm or debunk Nike's prominent claims, representations, and warranties that the Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.

63.     Nike materially misled and failed to adequately inform reasonable consumers, including Plaintiff, that the Products can cause harm to the environment.  A reasonable consumer understands Nike's "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," supports a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly claims to mean exactly what Nike proclaims them the mean – that the Products are sustainable and made from sustainable and environmentally friendly materials that are actually less harmful and more beneficial to the environment.

64.     Nike's representations that the Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly induced consumers, including Plaintiffs and Class Members, to pay a premium to purchase the Products.  Plaintiff and Class Members relied on Nike's false and misleading misrepresentations in purchasing the Products at some premium price above comparable alternatives that are not represented to be "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.  If not for Nike's misrepresentations, Plaintiff and Class Members would not have been willing to purchase the Products at a premium price.  Accordingly, they have suffered an injury as a result of Nike's misrepresentations.

65.     Nike knew that consumers will pay more for a product labeled "sustainability," "made with recycled fibers" which "reduces waste and our carbon footprint," supports a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly, and intended to deceive Plaintiff and putative class members by marketing and labeling the Products as purportedly "sustainable," "made with recycled fibers" which "reduces waste and

24

our carbon footprint," supporting a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly products.

66.    Nike has profited enormously from its false and misleading representations that the Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.  The purpose of this action is to require Nike to undertake a corrective advertising campaign and to provide consumers with monetary relief for Nike's deceptive and misleading product claims.

67.    Plaintiff would not have purchased the Products if she had known the truth. Accordingly, based on Nike's material misrepresentations and omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

68.    It is possible, however, that Plaintiff would purchase the Products in the future if they were properly labeled, and/or the Products complied with the labeling and advertising statements.  Specifically, Plaintiff would like to purchase the Products again if the Products were actually sustainable and made from sustainable and environmentally friendly materials that are less harmful and more beneficial to the environment.

## CLASS ACTION ALLEGATIONS

69.    Plaintiff and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

70.    Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of herself and all persons in the United States, who within the relevant statute of limitations periods, purchased the Products for personal, family, or household use ("National Class" or the "Class").

71.     Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of herself and seeks to represent a subclass defined as all Missouri residents, who within the relevant statute of limitations periods, purchased the Products for personal, family, or household use ("Missouri Subclass").

72.     Excluded from the Classes:

i.      Defendants, any entity in which a Defendant has a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, predecessors, successors, assigns, and employees;

ii.     Counsel and members of the immediate family of counsel for Plaintiff herein;

iii.    The judge and staff to whom this case was assigned, and any member of the judge's immediate family;

iv.     Individuals asserting claims for personal injury; and

v.      Persons or entities that purchase the Products for sole purposes of resale.

73.     Plaintiff reserves the right to revise the class definitions with greater specificity or division after having an opportunity to conduct discovery.

74.     The proposed Classes meet all requirements for class certification.  The members of the Classes satisfy the numerosity standards.  Plaintiff has a good faith belief that there are tens of thousands of Class Members.  Defendants have sold millions of units of the Products.  As a result, joinder of all Class Members in a single action is impracticable.  Class Members may be informed of the pendency of this Class Action by published and broadcast notice.

75.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, the "Sustainability" Collection Products in connection with Defendants' false, misleading, and deceptive statements.  Plaintiff

and Class Members have all sustained damages in that each paid the purchase price for the Products and sustained damages from Defendants' wrongful conduct.

76.     Plaintiff will fairly and adequately protect the interests of the Class and the Subclass and is an adequate representative of the Class and Subclass because she is a member of the Class and the Subclass.  Plaintiff has no interests which conflict with the interests of the members of the Class and Subclass she seeks to represent.  The interests of members of the Class and Subclass will be fairly and adequately protected by Plaintiff and her undersigned counsel, who have extensive experience prosecuting complex class action litigation.

77.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Common questions of law and/or fact exist as to all members of the Class, which predominate over any questions affecting solely individual members of the Class.  The questions of law and fact common to the Class arising from Defendants' actions include, without limitation, the following:

      a.   Whether Defendants misrepresented and/or failed to disclose material facts concerning the Products;

      b.   Whether Defendants' conduct was unfair and/or deceptive;

      c.   Whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the classes;

      d.   Whether Plaintiff and the Classes have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages; and

      e.   Whether injunctive, declaratory, and/or other equitable relief is warranted.

78.     With respect to the Missouri Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendants violated the Missouri Merchandising and Practices Act.

79.     These and other questions of law and/or fact are common to the Classes and predominate over any questions affecting only individual members of the Class and Subclass. The resolution of common questions in this case will resolve the claims of both Plaintiff and the Classes.

80.     A class action is superior, with respect to considerations of consistency, economy, efficiency, fairness, and equity, to other available methods for the fair and efficient adjudication of this controversy.  The prosecution of separate actions by members of the Class and the Subclass would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and/or fact common to the Class and the Subclass.  In addition, the prosecution of separate actions by members of the Class and the Subclass would establish incompatible standards of conduct for any party opposing the Class and the Subclass.  Also, the prosecution of separate actions by individual members of the Class and the Subclass, if fully adjudicated, as a practical matter, would be dispositive of the interests of the other members of the Class and the Subclass not parties to that particular adjudication and, as such, would substantially impair or impede upon those members of the Class and the Subclass' abilities to protect their interests.  A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

81.     The interest of members of the Class and the Subclass in individually controlling the prosecution of separate actions is theoretical rather than practical.  The Class and Subclass have a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable.  The amounts at stake for members of the Class and the Subclass, while substantial in the aggregate, may not be great enough individually to enable them to maintain separate suits against Defendants.  Plaintiff does not anticipate any difficulty in the management of this action as a class action.

**COUNT I**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Deception, 15 CSR 60-9.020**
**(As to the Missouri Subclass Only)**

82.     Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

83.     Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

84.     The acts and practices engaged in by Defendants, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq*.

85.     Defendants' actions alleged herein violated, and continue to violate, the MMPA.

86.     Defendants are a "person" within the meaning of the MMPA, at Missouri Revised Statutes § 407.010(5).

87.     The goods purchased from Defendants are "merchandise" within the meaning of the MMPA, Missouri Revised Statutes § 407.010(4).

88.     The transactions resulting in purchases of goods from Defendants in Missouri are a "sale" within the meaning of the MMPA, Missouri Revised Statutes § 407.010(6).

89.     Defendants engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of the "Sustainability" Collection Products in violation of Mo. Rev. Stat. § 407.020, which states in relevant part as follows:

> 407.020. 1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... is declared to be an unlawful practice. ... Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

90.     Plaintiff and Missouri Subclass Members purchased the "Sustainability" Collection Products, products that were falsely and deceptively represented as "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly as stated above, in violation of the Missouri Merchandising Practices Act and as a result Plaintiff suffered economic damages, in that the products she and other Missouri Subclass Members purchased were worth less than the products they thought they had purchased had Defendants' representations been true.

91.     Defendants' misrepresentations regarding the "Sustainability" Collection Products are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Missouri Subclass.

92.     Plaintiff and Missouri Subclass Members purchased the "Sustainability" Collection Products for personal, family, or household purposes.

93.     Plaintiff and Missouri Subclass Members reasonably and justifiably relied on Defendants' misleading and fraudulent representations about the "Sustainability" Collection Products when purchasing them.

94.     At all times relevant herein, Plaintiff was unaware that the "Sustainability" Collection Products were not "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly, and that they were not made from materials that are less harmful and more beneficial to the environment.

95.     Defendants' marketing materials for the "Sustainability" Collection Products do not disclose that the Products are not "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.

96.     Defendants' website does not disclose that the Products are not "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.

97.     Defendants' labeling for the "Sustainabilty" Collection Products does not disclose that the Products are not "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.

98.     Defendants' representations that the "Sustainability" Collection Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally

31

friendly are a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material misrepresentation.

99.    The foregoing acts and practices of Defendants constituted unfair and unlawful practices, and deceptive conduct, in violation of the Missouri Merchandising Practices Act.

100.    As a direct proximate result of the above-described practices, Plaintiff and the Missouri Subclass Members suffered ascertainable loss of money due to the purchasing of the "Sustainability" Collection Products.

101.    Plaintiff and Missouri Subclass Members have suffered an ascertainable loss caused by Defendants because they would not have purchased the "Sustainability" Collection Products or would have paid significantly less for the Products, had they known that Defendants' conduct was misleading and fraudulent.

102.    Appropriate injunctive relief is necessary to prevent Defendants' MMPA violations from continuing.  If Defendants' violations of the MMPA are not stopped by such injunctive relief, Plaintiff and the members of the Missouri Subclass will continue to suffer injury.

103.    Defendants' misrepresentations and omissions were material because they were likely to deceive reasonable consumers.

104.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and the Missouri Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including not receiving the benefit of their bargain in purchasing the Products.

105.    Plaintiff and other members of the Missouri Subclass lost money or property as a result of Defendants' violations because: (a) they would not have purchased the Products on the

32

same terms if they knew that the Products were not "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly; (b) they paid a substantial price premium compared to other household clothing products due to Defendants' misrepresentations and deceptions; and (c) the Products do not have the characteristics, uses, or benefits as promised.

106.    Plaintiff and the Missouri Subclass seek all monetary and non-monetary relief allowed by law, including treble damages, attorneys' fees and costs, and any additional relief this Court deems necessary or proper.

107.    WHEREFORE, Plaintiff and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT II**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Misrepresentation, 15 CSR 60-9.070**
**(As to the Missouri Subclass Only)**

108.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

109.    Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

110.    "A misrepresentation is an assertion that is not in accord with the facts."  15 CSR 60-9.070.

111.    As described further herein, whether a product is "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly is a fact which

33

may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

112.    Defendants' representations that the Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly – when the Products are not sustainable and not made from sustainable and environmentally friendly materials that are less harmful and more beneficial to the environment – is a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material misrepresentation.

113.    Defendants' representations that the Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly is a material misrepresentation.

114.    Defendants' misrepresentations were material because they were likely to deceive reasonable consumers.

115.    Plaintiff purchased the Products for personal, family, or household purposes.

116.    Plaintiff suffered an ascertainable loss as a result of Defendants' unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

117.    WHEREFORE, Plaintiff and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT III**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Concealment or Omission of any Material Fact, 15 CSR 60-9.110**
**(As to the Missouri Subclass Only)**

118.     Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

119.     Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

120.     The MMPA prohibits as an unlawful practice the act, use or employment of the "concealment, suppression or omission of any material fact" in connection with the sale or advertisement of any merchandise in trade or commerce.  §407.020.1, RSMo.

121.     A "material fact" is defined as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."  15 CSR 60-9.010(1)(C).

122.     "Concealment of a material fact" is defined as "any method, act, use or practice which operates to hide or keep material facts from consumers."  15 CSR 60-9.110(1).

123.     "Omission of a material fact" is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her."  15 CSR 60-9.110(3).

124.     Defendants' actions as alleged herein constitute the concealment and omission of material facts.

35

125.     Among other things, Defendants concealed and omitted the material facts that the Products are not "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.

126.     As described further herein, the representation that a product is "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

127.     Defendants' labeling, packaging, marketing, and advertising for the Products does not disclose that the Products are not "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," environmentally friendly, and that they are not made from materials that are less harmful and more beneficial to the environment.

128.     As described further herein, whether a product is "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

129.     Defendants' failure to disclose the fact that the Products are not "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," environmentally friendly, and that

they are not made from materials that are less harmful and more beneficial to the environment was a violation of the Missouri Merchandising Practices Act and was a material omission.

130.    Plaintiff purchased the Products for personal, family, or household purposes.

131.    Plaintiff suffered an ascertainable loss as a result of Defendants' unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented. In addition, the Products are legally worthless.

132.    WHEREFORE, Plaintiff and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT IV**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Half-Truths, 15 CSR 60-9.090**
**(As to the Missouri Subclass Only)**

133.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

134.    Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

135.    A half-truth misrepresentation as defined in the MMPA occurs when "any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading."  15 CSR 60-9.090.

136.    A "material fact" is defined as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable

consumer to act, respond or change his/her behavior in any substantial manner." 15 CSR 60-9.010(1)(C).

137.    "Omission of a material fact" is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." 15 CSR 60-9.110(3).

138.    Defendants' actions as alleged herein constitute the concealment and omission of material facts.

139.    Among other things, Defendants concealed and omitted the material facts that the Products were not sustainable and environmentally friendly.

140.    As described further herein, the representation that a product is "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

141.    Defendants' labeling, packaging, marketing, and advertising for the Products does not disclose that the Products are not "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," environmentally friendly, and that they are not made from materials that are less harmful and more beneficial to the environment.

142.    As described further herein, whether a product is sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly is a fact which

may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

143.    Defendants' failure to disclose the fact that the Products are not sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," environmentally friendly, and that they are not made from materials that are less harmful and more beneficial to the environment was a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material omission.

144.    Plaintiff purchased the Products for personal, family, or household purposes.

145.    Plaintiff suffered an ascertainable loss as a result of Defendants' unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

146.    WHEREFORE, Plaintiff and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT V**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Unfair Practice, 15 CSR 60-8.020**
**(As to the Missouri Subclass Only)**

147.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

148.    Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

149.    An unlawful practice as defined in the MMPA is any practice which "offends any public policy as it has been established by the Constitution, statutes or common law of this state,

*or by the Federal Trade Commission, or its interpretive decisions*." 15 CSR 60-8.020 (emphasis added).

150.    Additionally, Defendants' marketing, advertising, and labeling of the Products, as alleged herein, violates the MMPA, § 407.010 *et. seq.*

151.    Defendants' actions as alleged herein constitute an unlawful practice under the MMPA.

152.    Here, Defendants' labeling, marketing, and advertising of the Products, as alleged herein, violates the Guides for the Use of Environmental Marketing Claims, promulgated at 16 C.F.R. Part 260 ("Green Guides"), among others as set forth in this Complaint.

153.    As alleged in detail throughout the Complaint, Defendants' labeling, marketing, and advertising of the Products as "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly, despite the Products not being "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," environmentally friendly, and not made from materials that are less harmful and more beneficial to the environment, violates, and is therefore not in compliance with, the Federal Trade Commission's revised Guides for the Use of Environmental Marketing Claims, 16 C.F.R. Part 260 (Green Guides).

154.    Defendants' packaging, labeling, marketing, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

155.    Defendants knew or should have known of their unlawful conduct.

156.    There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.  Defendants should have complied with the law in their labeling, marketing, and advertising or otherwise manufactured and sold products that are truly sustainable and environmentally friendly.

157.    All of the conduct alleged herein occurred and continues to occur in Defendants' business.  Defendants' wrongful conduct is part of a pattern or generalized course of ongoing conduct repeated on thousands of occasions daily.

158.    Plaintiff purchased the Products for personal, family, or household purposes.

159.    Plaintiff suffered an ascertainable loss as a result of Defendants' unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

160.    WHEREFORE, Plaintiff and the Missouri Subclass pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT VI**
**Unjust Enrichment**
**(As to the National Class and the Missouri Subclass)**

161.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

162.    Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendants.

163.    At all times relevant hereto, Defendants deceptively marketed, advertised, and sold merchandise to Plaintiff and the Classes.

164.    Plaintiff and members of the Classes conferred upon Defendants non-gratuitous payments for the Products that they would not have if not for Defendants' deceptive advertising

and marketing.  Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiff and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendants and reasonable consumers would have expected.

165.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because of Defendants' misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

166.    Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Classes for their unjust enrichment, as ordered by the Court.

## COUNT VII
### Negligent Misrepresentation
### (As to the National Class and the Missouri Subclass)

167.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

168.    Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendants.

169.    Defendant has marketed the "Sustainability" Collection Products in a manner indicating that the Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.  However, the Products are not "sustainable," "made

with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly because they are not made from materials that are less harmful and more beneficial to the environment. Therefore, Defendants have made misrepresentations as to the Products.

170.    Defendants' representations regarding the Products are material to a reasonable consumer because they relate to the composition of the Products purchased by consumers.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

171.    At all relevant times when such misrepresentations were made, Defendants knew or have been negligent in not knowing that the representations were false and misleading. Defendants had no reasonable grounds for believing its representations were not false and misleading.

172.    Defendants intend that Plaintiff and other consumers rely on the representations made about the Products, as the representations are made prominently on the Products, and are reinforced throughout Defendants' marketing and advertising campaigns.

173.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' negligent misrepresentation when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

174.    Therefore, as a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the

Products, premiums paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## COUNT VIII
### Fraud
**(As to the National Class and the Missouri Subclass)**

175.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

176.    Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendants.

177.    As discussed above, Defendants have willfully, falsely, and knowingly provided Plaintiff and Class members with false or misleading material information about the Products and failed to disclose material facts about the Products, including but not limited to the fact that the Products are not "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.  Despite this, Defendants continue to intentionally represent that the Products are "sustainable," "made with recycled fibers" which "reduces waste and our carbon footprint," a "Move To Zero carbon and zero waste," made with "sustainable materials," and environmentally friendly.  Therefore, Defendants have made, and continue to make, misrepresentations as to the Products.

178.    The misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Products.

179.    Defendants' misrepresentations are material (*i.e.*, the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the composition of the Products.

180.    Defendants knew or recklessly disregarded the fact that the Products are not sustainable and environmentally friendly because they are not made from materials that are less harmful and more beneficial to the environment.

181.    Defendants intend that consumers rely on these representations, as the representations are made prominently on the Products, and are reinforced throughout Defendants' marketing and advertising campaigns.

182.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' misrepresentations when purchasing the Products and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

183.    Therefore, as a direct and proximate result of Defendants' fraudulent actions, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, premiums paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

184.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

    a.    For an order certifying the nationwide Class, and the Missouri Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as National Class representatives; naming Plaintiff as Missouri Subclass representative; and

naming Plaintiff's attorneys as Class Counsel to represent the National Class and Missouri Subclass members;

b. For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

c. For an order finding in favor of Plaintiff, the Nationwide Class and the Missouri Subclass on all counts asserted herein;

d. For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

e. For an order requiring Defendants to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendants from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and order Defendants to engage in corrective action;

f. For an order requiring Defendants to undertake a corrective advertising campaign;

g. For prejudgment and postjudgment interest on all amounts awarded;

h. For injunctive relief as pleaded or as the Court may deem proper;

i. For an order awarding Plaintiff and the Class and Missouri Subclass their reasonable attorneys' fees and expenses and costs of suit; and

j. For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

185.    Plaintiff demands a trial by jury on all issues so triable.

Dated:  May 10, 2023

Respectfully submitted,

ORLOWSKY LAW, LLC


/s/ Daniel J. Orlowsky
Daniel J. Orlowsky, #MO57387
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7375
dan@orlowskylaw.con

Attorney for Plaintiffs



GOFFSTEIN LAW, LLC


/s/ Adam M. Goffstein
Adam M. Goffstein, #MO45611
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7278
adam@goffsteinlaw.com

Attorney for Plaintiffs