# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |
|---|---|
| **MARIA GUADALUPE ELLIS**, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>**NIKE USA, INC. and NIKE RETAIL SERVICES, INC**.,<br><br>     Defendants. | Cause No.  4:23-cv-00632-MTS |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

BETH A. BAUER, #49981MO
bab@heplerbroom.com
**HEPLERBROOM LLC**
130 N. Main Street
Edwardsville, IL  62025
Telephone:  (618) 307-1200
Facsimile:  (618) 656-1364

DAVID R. SINGH (*Pro Hac Vice*)
david.singh@weil.com
MORGAN D. MACBRIDE (*Pro Hac Vice*)
morgan.macbride@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA  94065
Telephone: (650) 802-3000
Facsimile:  (650) 802-3100

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................1

PLAINTIFF'S ALLEGATIONS .................................................................................2

LEGAL STANDARD.................................................................................................3

ARGUMENT .............................................................................................................4

I.      PLAINTIFF LACKS ARTICLE III STANDING ............................................4

        A.      Plaintiff Lacks Standing to Seek Relief for Products She Did Not Purchase ..........4

        B.      Plaintiff Lacks Standing to Bring Claims Based on Representations She
                Did Not Review or Rely Upon..................................................................5

II.     THE COURT SHOULD DISMISS EACH OF PLAINTIFF'S CLAIMS FOR
        FAILURE TO ADEQUATELY ALLEGE ANY ACTIONABLE DECEPTION .............6

        A.      Plaintiff Did Not Satisfy Rule 9(b) ..........................................................6

        B.      Plaintiff Fails to Plausibly Allege Any Actionable Deception ..............................6

                1.      Nike's "Sustainability" Representations...................................................8

                2.      Nike's "Eco-Friendly" Representations..................................................10

                3.      Nike's "Move to Zero" Representations..................................................10

        C.      Counts III and IV Do Not Plead an Actionable Omission Under the
                MMPA ......................................................................................12

        D.      Plaintiff Fails to Plead a Violation of the Green Guide in Support of Count
                V........................................................................................13

        E.      Plaintiff's Common Law Claims (Counts VI—VIII) Fail Because They
                Are Duplicative of Her Deficient MMPA Claim..........................................13

        F.      Plaintiff's Common Law Claims (Counts VI—VIII) Suffer From
                Additional Pleading Deficiencies ..........................................................14

        G.      Plaintiff Lacks Standing to Seek Prospective Injunctive Relief ...........................15

CONCLUSION.........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. Golden Grain Co.*,
  2023 WL 3975107 (E.D. Mo. June 13, 2023) ..........................................................7

*Ariel Pref. Retail Grp., LLC v. CWCapital Asset Mgmt.*,
  2011 WL 4501049 (E.D. Mo. Sept. 28, 2011)...........................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................3, 4

*Barker v. Nestle Purina PetCare Co.*,
  601 F. Supp. 3d 464 (E.D. Mo. 2022) (Schelp, J.) ..........................................14, 15

*Bell v. Annie's, Inc.*,
  2023 WL 3568623 (E.D. Mo. May 18, 2023) (Schelp, J.) ...............................6, 7, 8

*Brunts v. Hornell Brewing Co.*,
  2023 WL 3568650 (E.D. Mo. May 19, 2023) ..........................................................15

*CIBC Bank USA v. Williams*,
  2023 WL 3310942 (Mo. Ct. App. May 9, 2023) ......................................................15

*Cortinas v. Behr Process Corp.*,
  2017 WL 2418012 (E.D. Mo. June 5, 2017) .....................................................10, 11

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006).................................................................................................5

*Dwyer v. Allbirds, Inc.*,
  598 F.Supp.3d 137 (S.D.N.Y. 2022)........................................................................11

*Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conf. Ctr.*,
  280 S.W.3d 678 (Mo. Ct. App. 2009).......................................................................14

*Goldman v. Tapestry, Inc.*,
  501 F. Supp. 3d 662 (E.D. Mo. 2020)........................................................................4

*Hammack v. Harbor Freight Tools USA, Inc.*,
  2022 WL 14225017 (W.D. Mo. Oct. 24, 2022)..........................................................14

*Hennessey v. Gap, Inc.*,
  2022 WL 4447399 (E.D. Mo. Sept. 23, 2022)...........................................................6

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*,
    441 F.3d 552 (8th Cir. 2006) .........................................................4

*Keithley v. Shelton*,
    421 S.W.3d 502 (Mo. Ct. App. 2013)........................................15

*Kelly v. Cape Cod Potato Chip Co.*,
    81 F. Supp. 3d 754 (W.D. Mo. 2015) .........................................4

*Lizama v. H&M Hennes & Mauritz LP*,
    2023 WL 3433957 (E.D. Mo. May 12, 2023) ........................... *passim*

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..............................................................3, 5, 15

*Mattes v. ABC Plastics, Inc.*,
    323 F.3d 695 (8th Cir. 2003) ......................................................2

*May v. Makita U.S.A., Inc.*,
    2023 WL 417487 (E.D. Mo. Jan. 26, 2023) .............................15

*Mikhlin v. Johnson & Johnson*,
    2014 WL 6084004 (E.D. Mo. Nov. 13, 2014) ..........................11

*In re Mun. Stormwater Pond*,
    429 F. Supp. 3d 647 (D. Minn. 2019) .......................................11

*Myers-Taylor v. Ornua Foods N. Am., Inc.*,
    2019 WL 424703 (S.D. Cal. Feb. 4, 2019) ...............................11

*Purcell Tire & Rubber Co. v. Padfield, Inc.*,
    2022 WL 2785898 (E.D. Mo. July 15, 2022) ...........................14

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*,
    322 S.W.3d 112 (Mo. Banc 2010) ............................................14

*Rochester Laborers Pension Fund v. Monsanto Co.*,
    883 F. Supp. 2d 835 (E.D. Mo. 2012)......................................11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)....................................................................3

*Stephenson v. Neutrogena Corp.*,
    2012 WL 8527784 (N.D. Cal. July 27, 2012)............................5

*Streambend Props. II, LLC v. Ivy Tower Minn., LLC*,
    781 F.3d 1003 (8th Cir. 2015) ....................................................4

*In re SuperValu, Inc.*,
   870 F.3d 763 (8th Cir. 2017) ............................................................................3

*Velder v. Cornerstone Nat'l Ins. Co.*,
   243 S.W.3d 512 (Mo. Ct. App. 2008) .............................................................14

*Warth v. Seldin*,
   422 U.S. 490 (1975) .........................................................................................3

**Statutes**

16 C.F.R. § 260.1(a) ...........................................................................................13

16 C.F.R. § 260.4(b)-(c) .....................................................................................13

Fed. R. Civ. P. 8 ...................................................................................................1

Fed. R. Civ. P. 9(b) .....................................................................................1, 4, 6

Fed. R. Civ. P. 12(b)(1) .......................................................................................3

Fed. R. Civ. P. 12(b)(6) .......................................................................................3

Mo. Rev. Stat. § 407.025.1(2) .............................................................................7

**PRELIMINARY STATEMENT**

Nike USA, Inc. and Nike Retail Services, Inc. (collectively, "Nike") have undertaken substantial efforts to reduce their impact on the environment.  Plaintiff's Complaint attempts to spin a tale of consumers being deceived by Nike's descriptions of its environmental efforts by mischaracterizing Nike's environmental representations and ignoring the accompanying explanations of the basis for those representations.  Judge Sippel recently dismissed a lawsuit asserting similar claims by Plaintiff's counsel.  *Lizama v. H&M Hennes & Mauritz LP*, 2023 WL 3433957 (E.D. Mo. May 12, 2023).  The Complaint here is rife with pleading deficiencies and is deserving of the same fate.

*First*, while Plaintiff tries to assert claims with respect to nearly 2,500 Nike products, she only purchased three and lacks Article III standing to assert claims with respect to products she did not purchase and representations she did not see or rely upon.

*Second*, all of Plaintiff's claims fail because she did not plead any actionable deception. Plaintiff's claims are all grounded in fraud, but the Complaint lacks the detail required by Rule 9(b).  Plaintiff's claims also fail Rule 8's plausibility standard because she does not plead facts establishing that she acted as a reasonable consumer would considering all circumstances, or that Nike's alleged representations or omissions would deceive a reasonable consumer.  A reasonable consumer would not be deceived by the representations Plaintiff identifies given Nike's explanations and qualifications.  Plaintiff also points to statements and imagery that are too subjective and immeasurable to be actionable.

*Third*, Plaintiff's common law unjust enrichment, negligent misrepresentation, and fraud claims also fail for independent reasons, including because they are barred by the economic loss doctrine and Plaintiff has not adequately alleged facts establishing that Nike had an intent to

deceive (as required for common law fraud) or that it received a benefit from Plaintiff (as required for unjust enrichment).

**Fourth**, Plaintiff lacks standing to seek prospective injunctive relief, as she is now fully aware of the supposed risk of deception and cannot seek relief for a hypothetical future injury.

The Court should dismiss the Complaint in its entirety.

## PLAINTIFF'S ALLEGATIONS

Plaintiff asserts that she purchased three Nike products—a women's shirt, a men's t-shirt, and a women's tank top—from a third-party retailer after reviewing allegedly deceptive environmental representations that Nike made on its website, labeling, advertising, and packaging. Compl. ¶¶ 14-15. While Plaintiff fails to identify the specific statements *she* reviewed, the Complaint references a scattershot of statements by Nike. To facilitate the Court's analysis, this motion categorizes them as follows: (1) statements that products contain "sustainable materials" (*e.g.,* Compl. ¶ 31 ("SUSTAINABLE MATERIALS + INNOVATION"); (2) statements that certain footwear products are "eco-friendly" (*e.g., id.* ("That's why Nike is committed to offering footwear options and running shoes that are eco-friendly.")); and (3) statements and imagery related to Nike's "Move to Zero" initiative, and Nike's journey toward zero carbon and waste, that focuses on carbon, waste, water, and chemistry (*e.g.,* Compl. ¶¶ 30-31 ("Today, when you see this logo, you see one small step in our journey to Move to Zero.")).

As further detailed below, however, Nike contextualizes and qualifies each of these representations.[1]  For example, every product designated as containing "sustainable materials" is

---

[1] In ruling on this motion, the Court may review materials embraced by the allegations of the Complaint but not included therein.  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) (internal citation omitted); *Lizama*, 2023 WL 3433957 at *4.  Here, although referenced as a basis for Plaintiff's allegations throughout the Complaint, Nike's website, labeling, advertising, or packaging is not singh
 thereto, and Nike is thus submitting them herewith.  *See, e.g.,* Compl. ¶¶ 15, 16, 27-32, 38, 42-44, 50, 82, 91, 95-98, 108, 111-113, 125-127, 133, 140-141, 147, 152-154, 161, 167, 169-170, 175, 177.  In addition to being incorporated

accompanied by a physical hangtag that describes the product's material makeup and use of "materials with less impact."  Compl. ¶ 61; Singh Decl. at Ex. 2.[2]  Every such product also has a unique webpage, which prominently provides in several places specific information about the materials used therein and their environmental impact.  Singh Decl. at Ex. 4.  And both the product-specific hangtags and webpages direct consumers to Nike's sustainability webpage, which provides even more information about the materials used in each product and Nike's many broader environmental efforts.  Compl. ¶ 29; Singh Decl. at Exs. 1-2.

Ignoring the explanations with Nike's environmental representations, Plaintiff asserts the following claims:  (1) violations of the Missouri Merchandising Practices Act ("MMPA") (Counts I—V); (2) unjust enrichment (Count VI); (3) negligent misrepresentation (Count VII); and (4) fraud (Count VIII).  Plaintiff purports to assert these claims on behalf of a nationwide class (for Counts VI—VIII) and a Missouri subclass (for all counts).  Compl. ¶¶ 82-183.

## <u>LEGAL STANDARD</u>

Under Rule 12(b)(1), a plaintiff bears the burden of establishing the "irreducible constitutional minimum of [Article III] standing."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiff must "clearly . . . allege facts" demonstrating that she suffered an injury in fact fairly traceable to the challenged conduct of the defendant, and likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  In a class action, the named plaintiff "must allege and show that [she] personally ha[s] been injured, not that injury has been suffered by other, unidentified members of the class."  *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017).

---

by reference, this Court may take judicial notice of these materials, as explained in the Request for Judicial Notice filed contemporaneously herewith.

[2] All exhibits are attached to the supporting declaration of David R. Singh, which is attached hereto.

Under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory assertions and labels are "not entitled to be assumed true." *Id.* at 681.

Rule 9(b) applies where a claim is grounded in fraud, regardless of the claim's label and even if fraud is not an element. *Streambend Props. II, LLC v. Ivy Tower Minn., LLC*, 781 F.3d 1003, 1012 (8th Cir. 2015).  Under Rule 9(b), "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).  For omission claims, a plaintiff "must allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *Ariel Pref. Retail Grp., LLC v. CWCapital Asset Mgmt.*, 2011 WL 4501049, at *9 (E.D. Mo. Sept. 28, 2011).

## ARGUMENT

## I.    PLAINTIFF LACKS ARTICLE III STANDING

### A.    Plaintiff Lacks Standing to Seek Relief for Products She Did Not Purchase

Even though Plaintiff alleges that she only purchased three Nike products, she attempts to recover damages for thousands of other products and purports to "reserve[] the right to amend this Complaint to include any additional items sold by Nike that are within the scope of this Complaint."  Compl. ¶ 4 n.1.  District courts in the Eighth Circuit are split on whether a plaintiff may assert claims related to a product they did not purchase.  Some courts find that a named plaintiff can represent only those who purchased the same product.  *See Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015) (plaintiff lacked standing to bring claims for the 12 varieties of chips that she did not purchase).  Others have held the products must be "substantially similar." *Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 667 (E.D. Mo. 2020).

Plaintiff lacks standing with respect to unpurchased products under either approach. Plaintiff lacks standing under *Kelly* because the three products she purchased are not identical to the thousands she did not.  Plaintiff lacks standing under the "substantial similarity" approach because she failed to and cannot allege facts establishing that the products she purchased, or the various representations relating to them, are substantially similar to the products she did not purchase.  **First**, the thousands of products at issue differ greatly, including shoes, shirts, hats, parkas, and socks.  Singh Decl. at Exs. 4-6; *Stephenson v. Neutrogena Corp.*, 2012 WL 8527784, at *1 (N.D. Cal. July 27, 2012) (finding defendant's facial cleanser, pore scrub, face and body bar, makeup remover, night cream, and moisturizer to not be substantially similar).  **Second**, the products have different material makeups.  For example, some products are made "with 100% recycled polyester fibers," while others are made with "with at least 20% recycled content by weight."  Singh Decl. at Exs. 4, 5.  **Third**, the representations accompanying each product differ depending on the type of product, where and how the product was made, the product's material makeup, and whether the products are being sold online or in-store.  Singh Decl. at Exs. 4, 7-8.

### B.   Plaintiff Lacks Standing to Bring Claims Based on Representations She Did Not Review or Rely Upon

Plaintiff also lacks standing to bring claims based on any representations she did not review in purchasing the products.  A "plaintiff must demonstrate standing for each claim he seeks to press."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  This requires plausibly alleging—for every claim—"a causal connection between the injury and the conduct complained of."  *Lujan*, 504 U.S. at 560.  Nike only made the "eco-friendly," "environmentally friendly," and "sustainable footwear" representations with regards to footwear in its Footwear Buying Guide.  Compl. ¶ 31; *see* Singh Decl. at Ex. 3.  Plaintiff does not allege that she purchased any footwear—Plaintiff only alleges that she purchased a Nike tank top, running top, and cropped top.  Compl. ¶

14.  As such, Plaintiff has not plausibly alleged any "causal connection" between her alleged injuries and the representations in the Footwear Buying Guide.

## II.   THE COURT SHOULD DISMISS EACH OF PLAINTIFF'S CLAIMS FOR FAILURE TO ADEQUATELY ALLEGE ANY ACTIONABLE DECEPTION

### A.   Plaintiff Did Not Satisfy Rule 9(b)

Each of Plaintiff's claims are grounded in fraud and thus subject to Rule 9(b).[3]  Indeed, her claims are all premised on the same theory that to capitalize "on consumers' increased interest in more 'green products,'" Nike "knowingly provided Plaintiff and Class members with false or misleading material information about the Products and failed to disclose material facts about the Products."  Compl. ¶¶ 7, 177; *see, e.g.*, ¶¶ 82-183 (Counts I—VIII).

Plaintiff makes the generalized allegation that she "saw the labeling, advertising, [Nike's] website, and read the packaging," (Compl. ¶ 15) but she does not identify the specific statements that she saw, as required by Rule 9(b).  Moreover, Plaintiff neither pleads that the labeling, advertising, website, or packaging was the same for all 2,452 products at issue, nor how it differs, including depending on whether the products are purchased online versus in-store.  Plaintiff also fails to plead what material facts were allegedly omitted from the materials she reviewed.  Plaintiff's generalized pleading does not satisfy Rule 9(b) and, because each of Plaintiff's claims is grounded in fraud, the Court should dismiss the Complaint in its entirety.

### B.   Plaintiff Fails to Plausibly Allege Any Actionable Deception

Claims under the MMPA are governed by the "reasonable consumer" test.  *See Bell v. Annie's, Inc.*, 2023 WL 3568623, at *3 (E.D. Mo. May 18, 2023) (Schelp, J.).  As this Court found, the 2020 amendments to the MMPA added three elements that "Plaintiff must also establish: (a)

---

[3] "The Eastern and Western Districts of Missouri have consistently held that Rule 9(b) applies to MMPA cases." *Hennessey v. Gap, Inc.*, 2022 WL 4447399, at *2 (E.D. Mo. Sept. 23, 2022).

that he acted as a reasonable consumer would in light of all circumstances; (b) that the method, act, or practice declared unlawful would cause a reasonable person to enter into the transaction that resulted in damages; and (c) individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty." *Id*. Further, in dismissing similar claims, the *Lizama* court held that disclosure of information regarding the representations at issue—through qualifying statements or additional context—can prevent a reasonable consumer from being misled. *Lizama*, 2023 WL 3433957 at *5-6 (dismissing claims asserted by the same two plaintiff's lawyers bringing this case because H&M disclosed on its website all information a reasonable consumer needs to interpret and understand its environmental representations). If a plaintiff fails to allege enough facts making it plausible that a "reasonable consumer" would be misled, dismissal is required. Mo. Rev. Stat. § 407.025.1(2).

Here, Plaintiff fails to adequately plead these new MMPA elements. Because Plaintiff does not state "any special circumstances that separate [her] from the average consumer, the issue of [Plaintiff]'s reasonableness in light of all circumstances and the issue of what a reasonable consumer would do present essentially the same question" and can thus be analyzed together. *See Abbott v. Golden Grain Co.*, 2023 WL 3975107, at *6 (E.D. Mo. June 13, 2023). Plaintiff has not plausibly alleged that she acted as a reasonable consumer by relying only on substantively and contextually gerrymandered excerpts of Nike's environmental representations. And even if Plaintiff reviewed only excerpts of Nike's representations in isolation, which is implausible, Missouri law would not excuse her failure to read the complete representations "where [she] ha[d] the opportunity to read something but cho[]se not to do so." *Bell*, 2023 WL 3568623, at *4. Nor has Plaintiff alleged that a reasonable consumer would be misled in light of Nike's transparent qualifications and context accompanying every representation at issue. Compl. ¶¶ 15, 29-31; *see*

7

*Bell*, 2023 WL 3568623, at *4 ("the MMPA itself recognizes that reasonable consumers read product labels and packaging").

          1.     <u>Nike's "Sustainability" Representations</u>

Nike's representations regarding the "sustainability" of materials in its products would not mislead a reasonable consumer to purchase Nike products.  Compl. ¶ 31.  ***First***, Nike explains and thus qualifies every "sustainability" representation such that a reasonable consumer would not be deceived.  Specifically, Nike does not represent that its products are sustainable, but rather only that certain products contain "sustainable materials."  *See* Singh Decl. at Ex. 2.  Nike further contextualizes this qualified representation by explaining why a given product is designated as containing "sustainable materials" and what those materials are.  *Id.*

For every product designated as containing "sustainable materials," Nike provides a physical hangtag that explains the product's material makeup and use of "materials with less impact"—*i.e.*, recycled and/or organic materials.  *Id.*; *see also* Compl. ¶ 29.  The hangtags also provide a QR code and link to Nike's sustainability webpage.  On its website—which Plaintiff alleges she reviewed prior to purchasing the products—Nike provides yet additional information about the recycled and/or organic materials specifically used in each such product, the recycled and/or organic materials that Nike uses generally, and Nike's broader environmental efforts.

Regarding Nike's use of recycled and/or organic materials in a given product, each product has its own webpage that prominently provides specific information about its recycled and/or organic materials, including in a summary statement located to the right of the product, in a "View Product Details" link, and in a "How This Was Made" dropdown.  *See* Singh Decl. at Ex. 4. Regarding Nike's use of recycled and/or organic materials generally, Nike describes each such material, including where it is made (*e.g.*, "all Air MI facilities are powered by 100% renewable wind energy"), what it is made from (*e.g.*, "Our recycled polyester is made from plastic bottles

8

which are cleaned, shredded into flakes, converted into pellets, and then spun into a high-quality yarn"), and how it compares to alternative materials (*e.g.*, "The new recycled nylon yarn reduces our carbon emissions by up to 50% compared to virgin nylon"). *See* Singh Decl. at Ex. 2.

In fact, Plaintiff identifies only a single instance where "sustainable" was not accompanied by the term "materials"—Nike referred to "sustainable footwear" in its Footwear Buying Guide. As explained above, Plaintiff lacks standing to bring a claim with respect to this representation because she did not purchase footwear. But even if she had standing, which she does not, Nike qualified the "sustainable footwear" representation as it did with its "sustainable materials" and "recycled materials" representations. The Guide provided consumers with information about the "sustainable materials" used in such footwear and directed consumers to its footwear product pages, which contain detailed information about their material makeup. *See* Singh. Decl. at Ex. 3.

***Second***, Plaintiff's argument that there are more sustainable uses for the recycled materials used in Nike's products was considered and rejected in *Lizama*. In *Lizama*, as here, the plaintiffs asserted that "sustainability" representations regarding using "recycled materials" were misleading because those recycled materials were sourced from PET bottles and thus could have been used in a more sustainable way. 2023 WL 3433957, at *6; Compl. ¶¶ 41-52. The court rejected this argument, finding that no reasonable consumer would compare the use of recycled materials in clothing to plastic bottles given the contextualizing information H&M disclosed to consumers. *See Lizama*, 2023 WL 3433957, at *6. Similarly, here, no reasonable consumer would be misled by Nike's representations about using "recycled fibers"—*e.g.*, "recycled polyester" and "recycled nylon"—because Nike discloses the source and composition of those recycled fibers, as well as how use of those recycled fibers compares to use of their virgin counterparts. *See* Compl. ¶ 31; *Lizama*, 2023 WL 3433957, at *8 (finding a reasonable consumer could not be misled because

9

H&M disclosed the source, composition, and other relevant information about its products).

*Third*, Plaintiff's allegation that a majority of the "Sustainability Collection Products" are not made with "recycled fibers" is contradicted by the very website Plaintiff reviewed.  Compl. ¶ 36.  Nike has never had a "Sustainability Collection" so it is unclear what Plaintiff is even referring to.  Further, as explained above, every product identified by Nike as containing "sustainable materials" has language both on the physical hangtag and website product page explaining the basis for the "sustainable materials" designation.  Compl. ¶¶ 29, 61; Singh Decl. at Ex. 4.  Plaintiff has not alleged any facts making it plausible that any such product-specific language is false.

## 2. Nike's "Eco-Friendly" Representations

Plaintiff also alleges that Nike misleadingly represented its products as "eco-friendly" and "environmentally friendly."  Compl. ¶ 31.  These allegations are also insufficient.  Even if Plaintiff has standing to bring a claim on behalf of these representations—which she does not (*see supra at* Section I.A)—a reasonable consumer would not be misled because Nike contextualized and qualified the "eco-friendly" and "environmentally friendly" representations.  For example, in the "Frequently Asked Questions" section of the Footwear Buying Guide, Nike answered the question "What Are Environmentally Friendly Shoes Made Of," stating that they "are often made with recycled rubber, recycled plastic, recycled PET (a type of recycled plastic), recycled polyester, recycled plastic bottles and other eco-friendly materials."  Singh Decl. at Ex. 3.  The Guide also directed consumers to the actual footwear product pages.  *Id*.  As such, a reasonable consumer would not be misled by these representations to purchase Nike products.

## 3. Nike's "Move to Zero" Representations

Plaintiff alleges that various statements and imagery related to Nike's "Move to Zero" initiative are misleading.  *See, e.g.*, Compl. ¶¶ 29-31.  However, the representations Plaintiff identifies are too subjective to be actionable.  *See Cortinas v. Behr Process Corp.*, 2017 WL

2418012, at *2 (E.D. Mo. June 5, 2017) (statements that are neither specific nor measurable and cannot be reasonably interpreted as making a factual claim constitute puffery and are not actionable under the MMPA).

Regarding the statements, Plaintiffs alleges that statements such as "Taking Action, Together," "Move to Zero carbon and zero waste," and "Circular Solutions" are misleading. Compl. ¶¶ 31-32. However, these are subjective, immeasurable statements that no reasonable consumer would regard as making a factual claim on which she could rely. *See Rochester Laborers Pension Fund v. Monsanto Co.*, 883 F. Supp. 2d 835, 882 (E.D. Mo. 2012) ("vague statement[s] of corporate optimism" are not actionable); *In re Mun. Stormwater Pond*, 429 F. Supp. 3d 647, 656 (D. Minn. 2019) (statements about environmental or global stewardship were non-actionable). And even if these statements were actionable, as explained above, the additional information Nike provides prevents a reasonable consumer from being misled by them.

Regarding Plaintiff's argument that Nike can be liable for the use of environmental imagery, Plaintiff identifies marketing containing "models and cartoon characters surrounded by lots of flowers and plush green plants," and the Sunburst logo as misleading. Compl. ¶ 30. But this imagery makes no representation of fact at all and would not mislead a reasonable consumer. *See Dwyer v. Allbirds*, *Inc.*, 598 F.Supp.3d 137, 153-54 (S.D.N.Y. 2022) (depictions of "happy" sheep" in "pastoral settings" were not actionable); *Myers-Taylor v. Ornua Foods N. Am., Inc.*, 2019 WL 424703, at *5 (S.D. Cal. Feb. 4, 2019) (images of "happy grass-fed cows" eating grass were "generalized statements . . . so exaggerated as to preclude reliance by consumers.").[4]

---

[4] Plaintiff also fails to plead the ascertainable loss element because her allegations establish that she received the benefit of the bargain. *See Mikhlin v. Johnson & Johnson*, 2014 WL 6084004, at *3 (E.D. Mo. Nov. 13, 2014) ("While [plaintiffs] contend that they [paid a price premium or] would not have purchased and used Johnson's Baby Powder had they known about the increased ovarian cancer risk, the Court' holds that 'these Plaintiffs received 100% use (and benefit) from the products and have no quantifiable damages.'"). Given that Plaintiff received the benefit of the bargain, she is also unable to adequately plead the damages element added in the 2020 amendment to the MMPA.

**C.      Counts III and IV Do Not Plead an Actionable Omission Under the MMPA**

In Counts III and IV, Plaintiff alleges MMPA claims premised upon an alleged omission of material fact.  However, the Complaint fails to allege any material facts regarding the materials Nike uses in its products or Nike's environmental efforts more generally that are not available to the reasonable consumer.  *See Lizama*, 2023 WL 3433957, at *7 (finding no actionable omission under MMPA because H&M disclosed sufficient information enabling consumers to "independently verify" H&M's representations).

Plaintiff relies on her general allegation that she reviewed Nike's website, packaging, labeling, and advertising prior to purchasing the products (Compl. ¶ 15) and thus cannot evade the explanations that accompany every representation, as well as the voluminous other information that Nike discloses to consumers.  While omitted from the Complaint, Nike provides consumers with information about the material makeup of every product—including what type and how much of that makeup comes from "recycled fibers"—on both a product-specific hangtag and webpage. *See* Compl. ¶ 29; Singh Decl. at Ex. 4.

Similarly, as to the "made with recycled fibers" representation, Nike's website contains numerous pages devoted to explaining the recycled and/or organic materials Nike uses in its products, including what those materials are, how use of those materials compares to use of their virgin counterparts, and more generally the environmental impact of using those materials.  Compl. ¶¶ 31-32; Singh Decl. at Ex. 2.  Further, information from other sources is widely available and accessible.  *See* Compl. ¶¶ 44-46 & n.16, 18 (collecting articles).  Thus, consumers are readily able to not only ascertain Nike's environmental efforts and its products' material makeups, but to also independently verify whether Nike's representations comport with their own interpretations.

As to the "Move to Zero" representations, Nike's website contains several webpages devoted to explaining the initiative, including its purpose and status, as well as future targets for

greenhouse gas emissions.  *See* Singh Decl. at Ex 1.   For these reasons, the Complaint fails to identify an actionable omission by Nike and Counts III and IV should be dismissed.

### D.   Plaintiff Fails to Plead a Violation of the Green Guide in Support of Count V

Count V alleges an MMPA violation premised upon a violation of the Federal Trade Commission's ("FTC") Guides for the Use of Environmental Marketing Claims ("Green Guides"). Compl. ¶ 152.  Even if the Green Guides could form the basis for a cause of action, which is doubtful,[5] they prohibit "[u]nqualified general environmental benefit claims," but authorize "[m]arketers [to] qualify general environmental benefit claims to prevent deception about the nature of the environmental benefit being asserted."  16 C.F.R. § 260.4(b)-(c).  Here, contrary to Plaintiff's allegations, Nike's representations conform to the Green Guides.

In *Lizama*, the court found that H&M's representations did not violate the Green Guides because H&M "clearly defined the basis" for its representations and thus "substantiated and qualified" them.   2023 WL 3433957, at *8.   Similarly, here, Nike defined the basis for every environmental representation identified by Plaintiff and thus substantiated and qualified them.  *See supra at* II.B.1.  Not only does Nike provide information regarding these representations and Nike's environmental efforts more generally, but it also discloses the material makeup for every product on both a product-specific hangtag and webpage.  *Id.*  As such, rather than prohibit Nike's representations, the Green Guides specifically authorize them.

### E.   Plaintiff's Common Law Claims (Counts VI—VIII) Fail Because They Are Duplicative of Her Deficient MMPA Claim

Plaintiff's common law unjust enrichment, fraud, and negligent misrepresentation claims are based on the same deficient allegations of consumer deception and thus fail with her MMPA

---

[5] The Eighth Circuit has not considered whether the Green Guides can serve as the basis for an independent MMPA claim.  *See Lizama*, 2023 WL 3433957, at *8.  The better view is no because the Green Guides explicitly state that they "do not confer any rights on any person and do not operate to bind the FTC or the public."  16 C.F.R. § 260.1(a).

claims.  *See Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. Banc

2010) (negligent misrepresentation requires showing that information supplied is false); *Velder v.*

*Cornerstone Nat'l Ins. Co.*, 243 S.W.3d 512, 517 (Mo. Ct. App. 2008) (same for fraud); *Exec. Bd.*

*of Mo. Baptist Convention v. Windermere Baptist Conf. Ctr.*, 280 S.W.3d 678, 697 (Mo. Ct. App.

2009) (unjust enrichment requires showing it would be unjust to allow defendant to retain benefit);

*Lizama*, 2023 WL 3433957, at *8 (dismissing unjust enrichment, negligent misrepresentation, and

fraud claims on the same basis as plaintiffs' MMPA claims).  *Id.*

### F.     Plaintiff's Common Law Claims (Counts VI—VIII) Suffer From Additional Pleading Deficiencies

In addition to being predicated on insufficient allegations of deception, Plaintiff's common

law claims suffer from other pleading deficiencies.  Assuming that Missouri law applies to these

claims,[6] they are all barred by the economic loss doctrine, which bars claims in tort for purely

economic losses like those which Plaintiff alleges here.  Compl.  ¶ 12; *Renaissance Leasing,* 322

S.W.3d at 130-31.  Indeed, federal courts applying Missouri law have applied the economic loss

doctrine to bar each of Plaintiff's common law claims.  *See, e.g., Hammack v. Harbor Freight*

*Tools USA, Inc.*, 2022 WL 14225017, at *4 (W.D. Mo. Oct. 24, 2022); *Purcell Tire & Rubber Co.*

*v. Padfield, Inc.*, 2022 WL 2785898, at *6 (E.D. Mo. July 15, 2022).  Plaintiff also fails to plead

facts making it plausible that Nike had intent to deceive, as required for common law fraud, or that

---

[6] Plaintiff failed to specify any governing law for her purported nationwide common law claims, which is also a basis for dismissal of those claims.  Nike reserves the right to challenge the applicability of Missouri law, including because Nike is an Oregon company and Plaintiff identifies no basis for the application of Missouri law to non-Missouri purchasers.  The elements of the common law claims also vary greatly from state to state and Nike reserves the right to move to strike or dismiss the purported nationwide claims at a later stage on a more developed record.  *See Barker v. Nestle Purina PetCare Co.*, 601 F. Supp. 3d 464, 473 (E.D. Mo. 2022) (Schelp, J.) (expressing skepticism about the propriety of similar nationwide claims, but opting not to dismiss such claims at the initial pleading stage).

Nike received a benefit from Plaintiff, who purchased Nike products from a third-party retailer.[7] Compl. ¶ 14.   Furthermore, as Judge Limbaugh recently recognized, the MMPA provides an adequate statutory remedy that precludes equitable claims like unjust enrichment.  *May v. Makita U.S.A., Inc.*, 2023 WL 417487, at *6 (E.D. Mo. Jan. 26, 2023).   These pleading deficiencies are independent bases for dismissal of the common law claims.

### G.    Plaintiff Lacks Standing to Seek Prospective Injunctive Relief

To establish standing to seek prospective injunctive relief, the complaint must show an injury that is "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560. Plaintiff alleges she "would like to purchase the Products in the future if they were properly labeled, and/or the Products complied with the labeling and advertising statements."  Compl. ¶ 68. However, courts have found that these type of "some day" allegations are insufficient to establish a likelihood of future injury.  *Brunts v. Hornell Brewing Co.*, 2023 WL 3568650, at *10-11 (E.D. Mo. May 19, 2023) (finding no standing for prospective injunctive relief because plaintiff's allegation that he would purchase the product if labeled correctly was a hypothetical situation); *Barker v. Nestle Purina PetCare Co.*, 601 F. Supp. 3d 464, 470-71 (E.D. Mo. 2022) (Schelp, J.) (finding no standing for prospective injunctive relief where plaintiff only stated that she would consider buying the product if it no longer contained wheat as labeled).  The Court should thus dismiss Plaintiff's demand for prospective injunctive relief.

### <u>CONCLUSION</u>

For these reasons, Nike respectfully requests that the Court dismiss the entire Complaint.

---

[7] *See Keithley v. Shelton,* 421 S.W.3d 502, 506 (Mo. Ct. App. 2013) ("'[F]raud is a positive act resulting from a willful intent to deceive.'") (citations omitted); *CIBC Bank USA v. Williams,* 2023 WL 3310942, at *9 (Mo. Ct. App. May 9, 2023) (requiring defendant's receipt of benefit from plaintiff for unjust enrichment claim).

Dated: July 6, 2023                                 Respectfully submitted,

                                                    **HEPLERBROOM LLC**

                                                    By:  _/s/ Beth A. Bauer_
                                                    BETH A. BAUER, #49981MO
                                                    130 N. Main Street
                                                    Edwardsville, IL  62025
                                                    Telephone:  (618) 307-1200
                                                    Facsimile:  (618) 656-1364
                                                    bab@heplerbroom.com

                                                    DAVID R. SINGH (*Pro Hac Vice*)
                                                    MORGAN D. MACBRIDE (*Pro Hac Vice*)
                                                    **WEIL, GOTSHAL & MANGES LLP**
                                                    201 Redwood Shores Parkway, 4th Floor
                                                    Redwood Shores, CA  94065
                                                    Telephone: (650) 802-3000
                                                    Facsimile: (650) 802-3100
                                                    david.singh@weil.com
                                                    morgan.macbride@weil.com

                                                    ***Attorneys for Defendants NIKE USA, INC.***
                                                    ***and NIKE RETAIL SERVICES, INC.***

## CERTIFICATE OF SERVICE

        The foregoing was electronically filed with the Court this 6th day of July, 2023, and served via the Court's ECF system upon all counsel of record.

                                                     _/s/ Beth A. Bauer_

16